UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

    :

**RAFAEL ANDRES RUBIO BOHORQUEZ**,     :

    :

              Petitioner,     :

    : **MEMORANDUM DECISION**

        – against –     : **AND ORDER**

    : 26-CV-2053 (AMD)

**MARKWAYNE MULLIN, KENNETH**     :
**GENALO, TODD BLANCHE,** and **RAUL**
**MALDONADO**,     :

    :

            Respondents.     :

    :

------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On January 12, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner when he arrived for an asylum interview. (ECF No. 8 ¶ 10.) The

petitioner is currently detained in the Delaney Hall Detention Facility in Newark, New Jersey.

(ECF No. 14 at 1.) He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and moves to

compel the respondents to return him to this district. (ECF Nos. 8, 14.) As explained below, the

Court grants the petition for a writ of habeas corpus and holds the motion to compel in abeyance.

## BACKGROUND[1]

### I.  Factual Background

#### a.  Arrival and TPS Status

The petitioner is an asylee from Venezuela.  (ECF No. 8 ¶ 28; ECF No. 19.)[2]  On April 26, 2017, he came into the United States on a visitor's visa.  (ECF No. 8 ¶ 28; ECF No. 6-1 ¶ 10.)  On March 25, 2021, he applied for Temporary Protected Status ("TPS"), which protects noncitizens from "designated" countries from detention and removal.  (ECF No. 8 ¶ 29.)  He was granted TPS on September 9, 2022.  (*Id.*)  The Department of Homeland Security ("DHS") extended his TPS through September 10, 2025.  (*Id.* ¶ 22.)  DHS terminated Venezuela's TPS designation on that date, and withdrew the petitioner's TPS status on November 20, 2025.  (ECF No. 8-3 ¶¶ 8–9.)  The petitioner applied for asylum five days later.  (*Id.* ¶ 10.)

#### b.  Detention

ICE arrested and detained the petitioner on January 12, 2026, when he appeared for his asylum interview.  (ECF No. 8-3 ¶ 11.)  ICE then filed a Notice to Appear charging him with overstaying his visa, and started removal proceedings against him.  (*Id.* ¶ 12; ECF No. 6-1 ¶¶ 19–20.)  According to the government, ICE conducted an initial custody determination and

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits.  *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

The Court has reviewed all the submissions and finds that the petition "present[s] only issues of law." Accordingly, the Court can decide the petition without a hearing.  *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

[2] After he filed this petition, the petitioner was granted asylum.  (ECF No. 19.)  As explained below, the government is planning to appeal that determination, and maintains that the petitioner should be detained, despite the grant of asylum.

determined that the petitioner must be detained pending removal proceedings pursuant to 8

U.S.C. § 1226(a), a determination that ICE documented in Form I-286, Notice of Custody

Determination, which the petitioner allegedly refused to sign.  (ECF No. 6-1 ¶ 18.)

### c.  Initial Bond Hearing

The petitioner asked for and was given a bond hearing on February 2, 2026, at which the

petitioner was represented by private counsel.  (*Id.* ¶ 28; ECF No. 8 ¶ 36–37.)  The immigration

judge ("IJ") found that the petitioner did not meet "his burden of proving that he is not a danger

to the community of the United States, the threshold determination in a custody hearing."  (ECF

No. 15 at 12.)  The IJ gave "diminished weight" to "various letters discussing the [petitioner's]

good moral character," and emphasized the petitioner's answers in TPS and asylum applications

to questions about whether he had been arrested or charged with a crime.  (*Id.* at 14.)  In those

applications, the petitioner answered "no," even though he had been arrested and charged with

assault and harassment in 2023; those charges were dismissed, and the petitioner's arrest record

was sealed.  (*Id.* at 14–15.)  The petitioner's counsel argued that the petitioner "made a common

mistake when filing these applications — which he did *pro se* — as his criminal history was

dismissed and sealed at the time of filing and therefore, he erroneously believed that he did not

have a criminal record in the United States."  (*Id.* at 15.)[3]  The IJ said that his answers on the

applications were a crime, which "weigh[ed] heavily toward a finding of dangerousness to the

community."  (*Id.* at 15.)  The IJ concluded:

> The [petitioner] is, on this record, a competent, educated individual
> who filed lengthy applications without the help of an attorney.
> Indeed, the Court notes that the [petitioner] even filed numerous
> pieces of evidence in support of his asylum application.  Therefore,
> the Court does not consider the [petitioner's] misrepresentations to

---

[3] The petitioner did not testify at the hearing.  (ECF No. 15 at 15.)

> be accidental or the product of misunderstanding the instructions. Instead, the record evidence indicates that the [petitioner] intentionally concealed his criminal history in the United States to obtain immigration benefits.

(*Id.* (citations omitted).) Accordingly, the IJ denied bond. (*Id.* at 16.) The record does not reflect that the IJ considered alternatives to detention that would address the IJ's concerns about dangerousness. (*See* ECF No. 8-3 ¶ 21.) The petitioner filed a Notice of Appeal, which is pending before the Board of Immigration Appeals. (*Id.* ¶ 22.)

## II. Procedural History

### a. Habeas Petition in the Southern District of New York

On January 12, 2026, lawyers from the New York Legal Assistance Group ("NYLAG") filed a habeas corpus petition on the petitioner's behalf in the Southern District of New York. (ECF No. 8 ¶ 36.) Shortly thereafter, the petitioner retained new counsel — the same private counsel who represented the petitioner at the February 2, 2026 bond hearing before the IJ. (*Id.* ¶ 37.) Private counsel focused only on the petitioner's TPS status; counsel argued that the petitioner's detention and removal were unlawful because his TPS was still active, and in the alternative, that the government withdrew the petitioner's TPS unlawfully. *See Rubio v. Francis*, No. 26-CV-264, 2026 WL 811178, at *8, *11 (S.D.N.Y. Mar. 23, 2026) (noting that decision was based solely on counsel's arguments, some of which were "difficult . . . to pin down"). Judge John Cronan held a hearing on the petition, and denied it on March 23, 2026. *See id.* The petitioner's appeal of that decision is pending in the Second Circuit.

### b. Removal and Asylum Proceedings

On March 18, 2026, an IJ ordered the petitioner removed, finding that he had abandoned his application for asylum because private counsel did not get the petitioner's signature for the application. (ECF No. 8-3 ¶ 16.) The petitioner retained new lawyers from the Bronx

Defenders, who successfully moved to reopen the removal proceedings. (*Id.* ¶ 17.) An IJ then determined that the petitioner's private counsel was ineffective. (*Id.*) On May 27, 2026, an IJ granted the petitioner's application for asylum. (ECF No. 19.)

The IJ concluded that the petitioner "satisfactorily addressed a single arrest noted in the record by providing a certificate of dismissal, and by explaining the underlying event leading to the arrest." (ECF No. 19-1 at 5.) Observing that while "any arrest should concern the Court," the IJ found "this event to be isolated, fully resolved without a conviction, and in light of the positive character evidence in the record, including, but not limited to, multiple letters regarding [the petitioner's] positive character, evidence regarding payment of taxes, and [the petitioner's] forthright testimony at hearing, the Court finds on balance the [petitioner] merits this Court's exercise of discretion." (*Id.*)

### c. This Petition

On April 7, 2026, the petitioner, represented by the Bronx Defenders, filed a second petition for a writ of habeas corpus in this district, because he was incarcerated at the Metropolitan Detention Center (the "MDC") in Brooklyn. (ECF No. 1.) The Court issued an order to show cause the same day, directing the government to respond to the petition by April 10, 2026. (*See ECF Order dated April 7, 2026.*) The government responded that the Court did not have jurisdiction to review the petition because the petitioner was no longer detained in this district. (ECF No. 6.) The petitioner filed an amended petition on April 14, 2026 (ECF No. 8), and as directed by the Court, responded to the government's jurisdiction argument (ECF No. 11). In an April 29, 2026 order, the Court determined that it had jurisdiction to review the petition pursuant to the "unknown custodian" exception to the district-of-confinement rule and directed the government to respond to the amended petition. (*See* ECF No. 12.)

On May 5, 2026, the petitioner, who had been transferred to the Delaney Hall Detention Facility in New Jersey, filed a motion to compel the government to return him to this district. (ECF No. 14.)  The government responded to the amended petition on May 6, 2026, and opposed the motion to compel on May 7, 2026.  (ECF Nos. 15, 16.)  The petitioner submitted a reply in support of his motion to compel on May 11, 2026.  (ECF No. 17.)

On May 21, 2026, the Court directed the parties to file an update on the status of the petitioner's removal proceedings, which, according to the parties' papers, were scheduled for April 20 and May 18.  (*ECF Order dated May 21, 2026*.)  On May 28, 2026, the petitioner advised the Court that that the IJ granted his application for asylum on May 27, 2026.  (ECF No. 19.)  The Court directed the government to inform the Court if it planned to continue detaining the petitioner given his asylee status.  (*ECF Order dated May 29, 2026*.)  On June 1, 2026, the government responded that it intends to appeal the asylum decision and continue detaining the petitioner through the appellate process.  (ECF No. 20.)

**LEGAL STANDARD**

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Under 8 U.S.C. § 1226, the government is authorized to detain certain noncitizens "already in the country pending the outcome of removal proceedings," including noncitizens

6

who — "[e]ven once inside the United States" — "were inadmissible at the time of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  Detention pursuant to 8 U.S.C. § 1226(a) is discretionary, and a noncitizen who is detained may request a bond hearing before an IJ.  8 C.F.R. §§ 1236.1(c)(8), (d)(1).

## DISCUSSION

The petitioner alleges that his detention violates due process because: (1) he had no pre-deprivation individualized assessment,[4] (2) the IJ at his post-deprivation hearing placed the burden on him to prove he was not a danger to the community, and (3) his detention is unconstitutionally prolonged without justification.  (ECF No. 8 ¶¶ 5–7.)  The government responds that the petition is an "abuse of the writ" and an impermissible "second bite of the apple" (ECF No. 15 at 1), and that the petitioner has not exhausted his administrative remedies (ECF No. 15 at 8).

## I.    Abuse of the Writ

The "abuse of the writ" doctrine permits a district court, in its discretion, to dismiss a successive habeas petition that raises claims that were raised or could have been raised in the first habeas petition.  *See McCleskey v. Zant*, 499 U.S. 467, 493–4 (1991).  The government premises its "abuse of the writ" argument on the petitioner's earlier petition in the Southern District of New York.  (ECF No. 15 at 1.)

"When a [detainee] files a second or subsequent application, the government bears the burden of pleading abuse of the writ," which it may satisfy by pleading "with clarity and

---

[4] The government provided copies of a Notice to Appear, arrest warrant, and notice of custody determination, each dated January 12, 2026, the date the petitioner was taken into custody.  (ECF No. 6-1 at 10–16.)  These documents show that ICE made a custody determination at or before the time it arrested the petitioner.  (*See id.*)  Because the Court grants the petition for other reasons, it does not reach the question of whether ICE's initial custody determination was an "individualized assessment."

particularity" the petitioner's writ history, identifying the claims that appear for the first time, and alleging that the petitioner has abused the writ. *McCleskey*, 499 U.S. at 494. "The burden to disprove abuse then becomes petitioner's," which he may do by showing "cause — *e.g.*, that he was impeded by some objective factor external to the defense" — "for failing to raise [the claim] and prejudice therefrom." *Id.* "Objective factors that constitute cause include . . . constitutionally ineffective assistance of counsel." *Id.* "[W]here a petitioner has failed to raise an available claim at an earlier opportunity and cannot meet the cause-and-prejudice test, 'the failure . . . may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.'" *Roccisano v. Menifee*, 293 F.3d 51, 61 (2d Cir. 2002) (quoting *McCleskey*, 499 U.S. at 494–5).

Because the government has satisfied its initial burden by showing that the petitioner filed an earlier petition in which he did not make the claims he makes in this petition, the petitioner must "disprove abuse" of the writ by showing "that he was impeded by some objective factor external to the defense." *McCleskey*, 499 U.S. at 494. The petitioner has carried this burden by showing that his private counsel was ineffective. Indeed, an IJ made that finding when new lawyers succeeded in getting the removal proceedings re-opened. (ECF No. 8 ¶ 40.) In the proceeding before Judge Cronan, private counsel whose arguments Judge Cronan described as "difficult to pin down," focused only on TPS, although Judge Cronan gave counsel more than sufficient opportunity to make other arguments:

> The Court has repeatedly attempted to clarify with Rubio's counsel whether this is his only argument for why the termination of Rubio's TPS was unlawful. On February 17, 2026, the Court directed Rubio's counsel to be prepared to discuss whether his argument was solely based on preclusion, or if he was independently arguing that "the Department of Homeland Security acted unlawfully in vacating its January 2025 TPS decision regarding Venezuela." Dkt. 35 at 2 (citation omitted). Then, at the hearing on February 26, the Court

> asked Rubio's counsel directly: "[J]ust to be clear, again, your argument today is based solely on the impact of the decision in the Northern District of California [about unlawful termination of TPS] on the case here? You're not making any other arguments? Is that right?" Oral Arg. Tr. at 22:23-23:1. Rubio's counsel was unequivocal: "That is correct, Judge." *Id.* at 23:2; *see also id.* at 10:3-9 ("Let me just stop you and just confirm[.] . . . Your argument is that the Northern District of California granted declaratory [relief] and that has [p]reclusive effect on me? That is your argument for why Mr. Rubio should be released? . . . Yes, Judge.").

*Rubio v. Francis*, 2026 WL 811178, at *8. Counsel's singular focus on arguments that appeared to lack merit — for example, counsel's insistence that Judge Cronan was bound by another district court's ruling — without considering more meritorious arguments, even when pressed, suggests that counsel was not effectively representing the petitioner. Accordingly, a "fundamental miscarriage of justice would result from a failure to entertain the claim."[5] *Roccisano*, 293 F.3d at 61.

Under these circumstances, in the exercise of its discretion, the Court declines to dismiss the petition as an "abuse of the writ." *See McCleskey*, 499 U.S. at 482 ("[W]hile we rejected res judicata in a strict sense as a basis for dismissing a later habeas action, we made clear that the prior adjudication bore vital relevance to the exercise of the court's discretion in determining whether to consider the petition.").

## II. Exhaustion of Administrative Remedies

The government also argues that the petitioner has not exhausted administrative remedies. (ECF No. 15 at 7–9.)

"Courts generally require 'administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus.'" *J.U. v. Maldonado*, 805 F. Supp. 3d

---

[5] The petitioner has obviously demonstrated prejudice, because Judge Cronan denied the first petition.

482, 489 (E.D.N.Y. 2025) (quoting *Quintanilla v. Decker*, 21-CV-417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021)). However, "exhaustion is a prudential matter, not a statutory requirement." *Id.* (citation modified). "[C]ourts in this Circuit have excused exhaustion when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

"Here, waiver of the exhaustion requirement is warranted as the Petition raises a substantial constitutional question that cannot properly be adjudicated administratively." *Habib v. Maldonado*, No. 26-CV-2038, 2026 WL 1088618, at *3 (E.D.N.Y. Apr. 22, 2026); *see also Valdez v. Joyce*, 803 F. Supp. 3d 213, 215 n.1 (S.D.N.Y. 2025) ("Petitioner has raised a constitutional question that could not be properly addressed by the Immigration Judge or Board of Immigration Appeals.").

Moreover, while the petitioner has other available remedies — including appealing or seeking another bond hearing — the process for these remedies risks further constitutional violations, *see J.C.G. v. Genalo*, No. 24-cv-8755, 2025 WL 88831, at *5–6 (S.D.N.Y. Jan. 14, 2025) (excusing exhaustion where the petitioner would be subject to the same "constitutionally suspect standard" on appeal), or at least irreparable injury in the form of prolonged detention, given the government's position that the burden at a bond hearing is on the petitioner and that it will detain the petitioner through all appeals, *see Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020) ("Detention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded. Absent release on bond, detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all

inter-agency and federal court appeals, even where an individual has prevailed and the

Government appeals.  The longer the duration of incarceration, the greater the deprivation.").

Under these circumstances, the Court finds that the petitioner does not have to exhaust

administrative remedies.

## III.   Due Process

### a.  Statutory and Regulatory Framework

Pursuant to 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained pending a

decision on whether [he] is to be removed from the United States."  8 U.S.C. § 1226(a).

"[P]ending such decision," the government may release the noncitizen "on bond" subject to

certain conditions.  8 U.S.C. § 1226(a)(2)(A).  A noncitizen seeking release on bond under

Section 1226(a) "must demonstrate to the satisfaction of the officer that such release would not

pose a danger to property or persons, and that the alien is likely to appear for any future

proceeding."  8 C.F.R. § 236.1(c)(8).  In *Velasco Lopez v. Decker*, the Second Circuit held that

Velasco Lopez's "prolonged incarceration, which had continued for fifteen months without an

end in sight or a determination that he was a danger or flight risk, violated due process," and that

a bond hearing where the government bears the burden to justify continued detention

"appropriately addressed the violation."  978 F.3d 842, 855 (2d Cir. 2020).  Thus, a noncitizen

detained pursuant to § 1226(a) is entitled to a bond hearing where the government has the burden

to show by clear and convincing evidence that the noncitizen is a danger to the community or a

flight risk.  *Id.*[6]

---

[6] The government argues that, "[u]nder *Velasco Lopez*, the Second Circuit held that Velasco Lopez's detention for more than fourteen (14) months under § 1226(a) was unreasonably prolonged, thus entitling him to a bond hearing where the government bears the burden, unlike a typical bond hearing under 1226(a) where it is the alien's burden."  (ECF No. 15 at 9.)  But the Second Circuit did not hold that a noncitizen properly bears the burden at a "typical" bond hearing, nor did it limit its holding to circumstances where the detention continues for more than 14 months.  *See Velasco Lopez v. Decker*,

The Court need not decide here whether the government bears that burden regardless of the length of the petitioner's detention. *See, e.g.*, *J.C.G. v. Genalo*, 2025 WL 88831, at *7; *Quintanilla*, 2021 WL 707062, at *3 (joining the "overwhelming consensus of judges in [the Southern District] in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention"). In this case, the burden must be on the government to show the petitioner is a danger to the community or a flight risk, because the petitioner's detention will be prolonged. The government plans to deprive the petitioner of his liberty while it appeals the IJ's grant of asylum, a process that is sure to exceed six months. (ECF No. 20 (explaining that the government has 30 days to appeal the IJ's grant of asylum, and that it has determined that the petitioner "should remain in custody during the pendency of that appeal").) *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding that detention for six months is presumptively reasonable); *Velasco Lopez*, 978 F.3d at 852 ("Detention . . . is frequently prolonged" because it "lasts through the initial removal determination proceedings . . . and all inter-agency and federal court appeals, even where [the petitioner] has prevailed."); *Kamel v. Lowe*, No. 26-CV-551, 2026 WL 1419135, at *4 (M.D. Pa. May 20, 2026) ("The asylum appeals process may take years, and indefinite detention under these circumstances would violate due process."). Moreover, placing the burden on the government, regardless of the length of detention, is reasonable. After all, the government — not the detainee — has access to the relevant information that would establish whether the detainee is a flight risk or a danger to the community. *See Velasco Lopez*, 978 F.3d at 853, 855.

---

978 F.3d 842, 852 (2d Cir. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) for the proposition that the "presumptive limit to reasonable duration of post-removal detention is six months").

It is difficult, if not impossible, for a detainee without such access to carry the burden of proof, making the risk of erroneous deprivation of liberty far greater.  *Id.*

### b.  Denial of Due Process and Relief

"As is the practice in this Circuit, to determine the constitutionally necessary procedures to justify continued detention, the Court applies the *Mathews* three-factor balancing test to the individual circumstances of this case, declining to adopt a bright-line rule."  *Lu v. Genalo*, 817 F. Supp. 3d 176, 184 (S.D.N.Y. 2025).

Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court balances  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

The weight of the first *Mathews* factor — the private interest affected by the government's action — "depends on both the nature of the private interest and the duration of the deprivation."  *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 277 (E.D.N.Y. 2002), *aff'd*, 60 F. App'x 861 (2d Cir. 2003).  The petitioner's interest is "the most significant liberty interest there is — the interest in being free from imprisonment."  *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *8 (E.D.N.Y. Oct. 5, 2025) (quoting *Velasco Lopez*, 978 F.3d at 851).  That interest is "seriously affected by [the petitioner's] prolonged detention," *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024), and "uniquely heightened" by the potential indefiniteness of his detention, *see Raspoutny v. Decker*, 708 F. Supp. 3d 371, 385 (S.D.N.Y. 2023).  Thus, the first *Mathews* factor weighs heavily in the petitioner's favor.

The second *Mathews* factor — the risk of erroneous deprivation of such interest through the procedures used and the value of additional safeguards — also favors the petitioner. There is a significant risk of erroneous deprivation in this case. At the petitioner's first bond hearing, the IJ placed the burden on him to show he was not a danger to the community or a flight risk, and did not consider whether there were alternatives to detention. Under the circumstances of this case, the government "might find [it] difficult to overcome [its burden] if it had to demonstrate affirmatively that [the petitioner] poses a risk of flight or danger to the community necessitating his continued detention." *Arana v. Decker*, No. 20-CV-4104, 2020 WL 7342833, at *5 (S.D.N.Y. Dec. 14, 2020). In fact, in granting the petitioner asylum, an IJ determined that the petitioner presented "positive character evidence" and "satisfactorily addressed" the arrest and dismissal of charges in 2023. (ECF 19-1 at 5.) In addition to the evidence the petitioner produced at the first hearing — "letters discussing [his] good moral character," including descriptions of the petitioner as "reliable, thoughtful" and someone who "had a profound effect on staff morale" (ECF No. 15 at 14) — the record will now show that the petitioner has been granted asylum, which means he cannot be removed. Moreover, because he has that status, he has no incentive to flee. On the contrary, he has every interest in seeing the process through.[7] An IJ determining whether the petitioner is entitled to bond and placing the burden on the government might very well conclude that the petitioner is entitled to release. *See Jimenez v. Decker*, No. 21-CV-880, 2021 WL 826752, at *9 (S.D.N.Y. Mar. 3, 2021).

Moreover, at a properly conducted hearing, the IJ should "consider alternatives to detention that would mitigate any dangerousness," which did not happen at the first hearing. (ECF No. 8-3 ¶ 21.) *See D.C. v. Noem*, No. 26-CV-1833, 2026 WL 787895, at *12 (S.D.N.Y.

---

[7] It is difficult to see why the government is insisting on detention in these circumstances.

Mar. 20, 2026) (explaining that "heavy weight of recent case law" instructs that IJ must consider alternatives to detention when evaluating whether the petitioner is eligible for bond). "[F]ailing to consider whether alternatives to detention may ameliorate any danger posed by [the petitioner's] release creates a significant risk that he will be erroneously deprived of his liberty interest." *Cantor v. Freden*, 761 F. Supp. 3d 630, 637 (W.D.N.Y. 2025).

The third *Mathews* factor — the government's interest — does not weigh in the government's favor. The purpose of detention under Section 1226(a), which the government invokes here, is to "prevent[] potentially deportable aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Joseph v. Decker*, No. 18-CV-264, 2018 WL 6075067, at *8 (S.D.N.Y. Nov. 21, 2018) (quotations omitted). The petitioner is an asylee and is protected from removal. *See Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025) ("[I]f [petitioner's] asylum application were granted, . . . such would block his removal."). The government does not explain how detaining the petitioner would serve any governmental interest, and the Court cannot discern any. In fact, if there is no reason to hold the petitioner, the government will have "prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community." *Velasco Lopez*, 978 F.3d at 857. Certainly, affording the petitioner a hearing, at which the government has the burden to justify detaining the petitioner, is not an unwarranted burden. *See Sajous v. Decker,* No. 18-CV-2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018) (concluding that the government is "unlikely to suffer any harm," as there is "nothing in the record to suggest that granting a bond hearing . . . will strain ICE resources or undermine its effective enforcement of the immigration laws").

In short, the petitioner is entitled to due process.  The government must give the petitioner another bond hearing, at which it must demonstrate by clear and convincing evidence that the petitioner is a danger to the community or a flight risk.  If the government cannot do so, it must release the petitioner.

**IV.    Motion to Compel Return to District**

The petitioner, who is currently detained at the Delaney Hall Detention Facility in New Jersey, also moves to compel the government to return him to this district.  (ECF No. 14.)  The government argues that the petitioner was transferred to the Delaney Hall Detention Facility because "MDC medical staff has determined that Petitioner's medical needs cannot be properly addressed at the MDC."  (ECF No. 16 at 1.)  The record is not sufficient for the Court to make this decision.

Accordingly, the government is directed to submit, by June 19, 2026, a sworn statement or other evidence supporting the assertions that "MDC medical staff has determined that Petitioner's medical needs cannot be properly addressed at the MDC" and "that Petitioner could not be detained at the MDC."  (ECF No. 16 at 1, 2.)  If the government cannot do so, or chooses not to do so, it may either transfer the petitioner back to this district in compliance with the Court's order dated April 29, 2026 (ECF No. 12), or release him from custody.

If the petitioner is released as a result of his court-ordered bond hearing, the government is excused from the requirement to respond further to the motion to compel and shall instead submit a letter to the Court certifying that it has released the petitioner.

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 8, is granted. The government is directed to provide the petitioner with an individualized bond hearing before an IJ by June 18, 2026. At that hearing, the government must bear the burden of demonstrating, by clear and convincing evidence, that the petitioner is a danger to the community or a flight risk. *See Velasco Lopez*, 978 F.3d at 857. The IJ must consider alternatives to detention and, if the petitioner is deemed eligible for bond, the petitioner's ability to pay. *See Black v. Decker*, 103 F.4th at 155.

In the event the government does not give the petitioner a bond hearing by June 18, 2026, or fails to satisfy its burden at that hearing, the government is ordered to release the petitioner immediately. By June 19, 2026, the government must submit a letter to the Court certifying compliance with this order.

The motion to compel return of the petitioner to this district is held in abeyance pending the government's submission of evidence to support its opposition to the motion.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        June 11, 2026